[No. B178115. Second Dist., Div. Six. Mar. 23, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
LUIS CARRASCO, Defendant and Appellant.

**COUNSEL**

Bruce Richland, Mitchell W. Egers and Arlyn M. Latin for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lance E. Winters and Laura J. Hartquist, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PERREN, J.**—Defendant Luis Carrasco asked his friend to give him money. The friend refused. At various times during the next four hours defendant threatened to kill his friend and fired gunshots near the front of the store where his friend worked. Two hours after the shots were fired, defendant came to the store and demanded money from his friend but did not show a gun. His friend gave him money.

We conclude that under these circumstances defendant committed a robbery. We also conclude that firing the gun after the first threat was made and two hours before defendant received the money supports the allegation of personally discharging a firearm during the commission of a robbery. (Pen. Code, § 12022.53, subd. (c).)[1]

---

[1] All statutory references are to the Penal Code.

Luis Carrasco appeals from his conviction, by jury, of three counts of second degree robbery. (§§ 211, 212.5, subd. (c).) He was sentenced to a determinate term of 25 years in state prison. The jury found true special allegations that he personally used a firearm (§ 12022.53, subd. (b)) and personally and intentionally discharged a firearm (*id.*, subd. (c)). The section 12022.53, subdivision (b) enhancement as to count 1 was stricken pursuant to section 12022.53, subdivision (f).

Carrasco appeals from the judgment and sentence enhancements. He contends that there was insufficient evidence to prove the elements of any of the robberies or the discharge of a firearm during the commission of the robbery charged in count 1. He also contends that the trial court erred in amending the information on its own motion (§ 1009) and that the evidence does not support the firearm enhancements or the robbery convictions. The People contend that the firearm enhancement under section 12022.53, subdivision (b) should have been stayed, not stricken. We will modify the judgment to stay the section 12022.53, subdivision (b) firearm enhancement but otherwise affirm.

*FACTS*

*Count 1*

Guillermo Dorado and Carrasco had been friends. During their friendship, Dorado often gave Carrasco money when he was asked to help him. Dorado and Carrasco had a falling out, and Dorado refused Carrasco's subsequent requests for money.

Veronica Gonsales worked at the 99 Cent Store on Roscoe Boulevard in Canoga Park. Dorado occasionally worked there. On the morning of March 21, 2004, Carrasco came to the 99 Cent Store and asked Dorado for money. Dorado refused. Carrasco became angry and, as he left the store, told Dorado that he would return in five minutes with a gun and kill him.

Approximately one hour later, Carrasco was seen approaching the store by Dorado and Gonsales who were inside the store. As Carrasco crossed the street in front of the store, he raised his hand in the shape of a gun toward oncoming traffic. He then made the same gesture toward Dorado.

After he crossed the street, Carrasco argued with the driver of a car leaving the store's parking lot. During the argument, Carrasco took a gun from underneath his sweater and fired two shots toward the car as it left the

parking lot. Gonsales saw Carrasco shoot the gun and fled to the back of the store. Dorado also ran to the back of the store and heard two shots as he ran.

Approximately 30 minutes after the shooting, Carrasco telephoned Dorado and told him he was nearby and that the bullet was meant for him. Two hours later, Carrasco came to the store and called Dorado outside. He demanded that Dorado give him money for beer. Dorado gave Carrasco $5.

*Count 2*

On March 23, 2004, Dorado was visiting Gonsales at the 99 Cent Store when Carrasco and a companion came into the store. Carrasco said to Dorado, "I need money." Carrasco's companion said Dorado would be killed if he did not give Carrasco money. Carrasco had a gun partially exposed in his waistband. Dorado asked Gonsales for the money. Gonsales gave Dorado approximately $60, and Dorado gave the money to Carrasco. Carrasco and his companion left the store.

*Count 3*

On March 25, 2004, Carrasco called Gonsales and told her that he was sending someone over to the store who would identify himself as "Llamas." Carrasco said she should give Llamas cigarettes, a lighter, and $10. Carrasco told Gonsales that if she did not give him what he wanted, he would kill her. About five or 10 minutes later, a man identifying himself as "Llamas" came to the store. Gonsales gave him $10, a package of Marlboro Red cigarettes and a blue lighter.

Later that day, Carrasco was arrested. During a search of his person, officers recovered a pack of Marlboro Red cigarettes and a blue lighter. Carrasco and an individual named Corral were arrested. Gonsales identified Carrasco and Corral as being the individuals involved in the robbery that day. Dorado was shown a photographic lineup where he identified Carrasco as being the person who robbed him.

Dorado and Gonsales testified that they were afraid Carrasco would harm them if they did not give him what he demanded.

## DISCUSSION

### *Court's Authority to Amend Information*

Carrasco contends the trial court violated section 1009[2] by amending count 1 of the information on its own motion to charge robbery instead of attempted robbery. He asserts the trial court exceeded its authority by amending the information without a request by the prosecutor. The People argue that Carrasco waived this contention or, alternatively, that Carrasco did not show he was prejudiced by the amendment.

The original complaint filed in this case charged Carrasco with attempted robbery. (§§ 664, 211.) At the conclusion of the preliminary hearing held on April 23, 2004, the district attorney moved that the complaint be amended to charge a "full on robbery" to conform to proof. The motion was granted without objection. For reasons not clear from the record, the information filed after the holding order again charged attempted robbery in count 1. On August 9, Carrasco's motion to dismiss the information (§ 995) was heard and denied. The information was amended on the court's motion and without objection to the robbery charge. Trial commenced on August 19.

 Where a defendant fails to object at trial to the adequacy of the notice he receives, any such objection is deemed waived. (*People v. Carbonie* (1975) 48 Cal.App.3d 679, 691 [121 Cal.Rptr. 831].) "It is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided." (*People v. Vera* (1997) 15 Cal.4th 269, 276 [62 Cal.Rptr.2d 754, 934 P.2d 1279].) Carrasco had time following the amendment to seek to correct the purported error. He chose not to do so. He will not now be heard to complain. (*People v. Edwards* (1991) 54 Cal.3d 787, 827 [1 Cal.Rptr.2d 696, 819 P.2d 436].)

---

[2] In pertinent part, section 1009 provides: "The court in which an action is pending may order or permit an amendment of an indictment, accusation or information, or the filing of an amended complaint, for any defect or insufficiency, at any stage of the proceedings, or if the defect in an indictment or information be one that cannot be remedied by amendment, may order the case submitted to the same or another grand jury, or a new information to be filed. The defendant shall be required to plead to such amendment or amended pleading forthwith, or, at the time fixed for pleading, if the defendant has not yet pleaded and the trial or other proceeding shall continue as if the pleading had been originally filed as amended, unless the substantial rights of the defendant would be prejudiced thereby, in which event a reasonable postponement, not longer than the ends of justice require, may be granted. An indictment or accusation cannot be amended so as to change the offense charged, nor an information so as to charge an offense not shown by the evidence taken at the preliminary examination. . . ."

■ Even if Carrasco did not waive the claim, his contention is without merit. The argument that the trial court has no authority to amend an information sua sponte is belied by the express language of the statute: "The court . . . may order . . . an amendment of an indictment, accusation or information . . . ." (§ 1009; see *People v. Myers* (1929) 206 Cal. 480, 481 [275 P. 219].)

Moreover, Carrasco failed to show he was prejudiced by the amendment. The record shows he was aware at all relevant times that he was charged in count 1 with robbery rather than attempted robbery. (See *People v. Winters* (1990) 221 Cal.App.3d 997, 1005 [270 Cal.Rptr. 740] [information may be amended at any stage of the proceedings if the amendment does not prejudice the substantial rights of the defendant and does not charge an offense not shown by the evidence taken at the preliminary hearing].)

### *Substantial Evidence Supports the Robbery Convictions*

A claim based on insufficiency of the evidence is reviewed in the light most favorable to the prosecution and may not be reversed if " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People v. Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738].)

■ Section 211 states, "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." To secure a robbery conviction, the following elements must be proved: (1) A person had possession of property of some value however slight; (2) the property was taken from that person or from his immediate presence; (3) the property was taken against the will of that person; (4) the taking was accomplished by either force or fear; and (5) the property was taken with specific intent permanently to deprive that person of the property. (CALJIC No. 9.40.)

Carrasco asserts each of the three robbery convictions must be reversed because there is insufficient evidence that the victims were frightened when they gave him money and property. We disagree. Both Dorado and Gonsales testified they gave Carrasco the money because they were frightened. The evidence showed that Carrasco engaged in a series of threatening acts following Dorado's initial refusal to give him money for the sole purpose of intimidating Dorado. Carrasco threatened to shoot Dorado, he returned to the store with a gun shortly after the threat and shot at a car leaving the store's parking lot. Soon after the shooting incident, he called Dorado and told him the bullet was meant for him. This evidence is more than sufficient to support the robbery conviction. (See *People v. Wright* (1996) 52 Cal.App.4th 203, 209 [59 Cal.Rptr.2d 316] [robbery can be committed strictly by frightening a victim into surrendering property].)

The evidence is similarly compelling as to counts 2 and 3. The evidence showed that Dorado gave Carrasco $60 only after Dorado saw a gun in Carrasco's waistband and Carrasco's accomplice said Dorado would be killed if he did not give Carrasco the money. Gonsales testified that she gave Carrasco's companion the money, lighter and cigarettes because Carrasco threatened to kill her in a telephone call immediately prior to the robbery.

### Firearm Enhancements

Whether a defendant used a firearm in the commission of an enumerated offense is for the trier of fact to decide. (*People v. Masbruch* (1996) 13 Cal.4th 1001, 1007 [55 Cal.Rptr.2d 760, 920 P.2d 705].) We review the sufficiency of the evidence to support an enhancement using the same standard we apply to a conviction. (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382 [37 Cal.Rptr.2d 596].) Thus, we presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. (*People v. Rayford* (1994) 9 Cal.4th 1, 23 [36 Cal.Rptr.2d 317, 884 P.2d 1369].)

■ The firearm enhancement statutes, section 12022.53, subdivisions (b) and (c), require that the defendant personally use or discharge a firearm in the commission of the underlying felony. The jury was instructed with CALJIC No. 17.19 and CALJIC No. 17.19.5, the standard firearm enhancement instructions.[3]

---

[3] CALJIC No. 17.19 states:

"It is alleged in Count 1 that the defendant personally used a firearm during the commission of the crime charged.

"If you find the defendant guilty of the crime charged or any lesser offense, you must determine whether the defendant personally used a firearm in the commission of that felony.

"The word 'firearm' includes a handgun. The 'firearm' need not be operable.

"The term 'personally used a firearm,' as used in this instruction, means that the defendant must have intentionally displayed a firearm in a menacing manner, intentionally fired it, or intentionally struck or hit a human being with it.

"The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true.

"Include a special finding on that question in your verdict, using a form that will be supplied for that purpose."

CALJIC No. 17.19.5 states:

"It is alleged in Count 1 that the defendant intentionally and personally discharged a firearm during the commission of the crime charged.

"If you find the defendant guilty of the crime thus charged or any lesser offense, you must determine whether the defendant intentionally and personally discharged a firearm in the commission of that felony.

"The word 'firearm' includes a handgun.

"The term 'intentionally and personally discharged a firearm', as used in this instruction, means that the defendant himself must have intentionally discharged it.

"The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true

"Include a special finding on that question in your verdict, using a form that will be supplied for that purpose."

Carrasco asserts that he cannot be convicted of personally discharging a gun in the commission of the robbery because there is no evidence he used a gun to enforce his demand for money or that he was armed at the time Dorado gave him the money. He argues that discharge of the firearm must occur during the crime's commission. Inherent in the argument is the assumption that the elements of the offense of robbery must be committed in some specified order and in some limited amount of time. That is not the law.

" '[R]obbery . . . is not confined to a fixed *locus*, but is frequently spread over a considerable distance and varying periods of time.' " (*People v. Laursen* (1972) 8 Cal.3d 192, 199 [104 Cal.Rptr. 425, 501 P.2d 1145]; see *People v. McGrath* (1976) 62 Cal.App.3d 82, 87 [133 Cal.Rptr. 27].) "The crime is not divisible into a series of separate acts. Defendant's guilt is not to be weighed at each step of the robbery as it unfolds. The events constituting the crime of robbery, although they may . . . take some time to complete, are linked by a single-mindedness of purpose." (*People v. Estes* (1983) 147 Cal.App.3d 23, 28 [194 Cal.Rptr. 909].) In other words, the crime of robbery begins with the commission of any of the defined elements and is completed when all of the remaining elements have been committed. It is a continuing offense that concludes not just when all the elements have been satisfied but when the robber reaches a place of relative safety. (*Ibid.*)

"A firearm use enhancement attaches to an offense, regardless of its nature, if the firearm use aids the defendant in completing one of its essential elements." (*People v. Masbruch, supra*, 13 Cal.4th at p. 1012.) The enhancement is not limited "to situations where the gun is pointed at the victim . . . ." (*People v. Granado* (1996) 49 Cal.App.4th 317, 322 [56 Cal.Rptr.2d 636].) Personal use of a firearm may be found where the defendant intentionally displayed a firearm in a menacing manner in order to facilitate the commission of an underlying crime. (See *People v. Lucas* (1997) 55 Cal.App.4th 721, 745 [64 Cal.Rptr.2d 282]; *Masbruch,* at pp. 1006–1007.)

"Thus when a defendant deliberately shows a gun, or otherwise makes its presence known, and there is no evidence to suggest any purpose other than intimidating the victim (or others) so as to successfully complete the underlying offense, the jury is entitled to find a facilitative use rather than an incidental or inadvertent exposure. The defense may freely urge the jury not to draw such an inference, but a failure to actually point the gun, or to issue explicit threats of harm, does not entitle the defendant to a judicial exemption

from section [12022.5]." (*People v. Granado, supra,* 49 Cal.App.4th at p. 325.)

█ The evidence showed that Carrasco displayed a gun in a menacing manner and threatened to use it to shoot Dorado on several occasions for the sole purpose of coercing Dorado to give him money. We conclude the jury could reasonably have found that Carrasco utilized his display of the gun " 'at least as an aid in completing an essential element of' " the subsequent crimes of robbery. (See *People v. Masbruch, supra,* 13 Cal.4th at p. 1014.)

*CALJIC No. 3.31*

Carrasco argues the jury was not instructed as to the necessity of finding a concurrence of act and intent with regard to the firearm enhancement allegations. The People contend Carrasco waived any error in the jury instructions because he failed to object at trial and, alternatively, that the jury was properly instructed and the jury's findings as to the enhancements were based on substantial evidence.

The court instructed the jury with CALJIC No. 3.31, as follows: "In the crimes charged, namely robbery, and the lesser offense of attempted robbery, there must exist a union or joint operation of act or conduct, and a certain specific intent in the mind of the perpetrator. Unless this specific intent exists, the crime to which it relates is not committed. The specific intent required is included in the definition of the crime set forth elsewhere in these instructions."

Carrasco asserts the court should have modified the instruction by inserting "allegations" after the word "crimes"; otherwise, the jury could have found the enhancements true without finding concurrence of act (use of a gun) and intent (to rob Dorado).

█ " 'Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.' " (*People v. Guiuan* (1998) 18 Cal.4th 558, 570 [76 Cal.Rptr.2d 239,

957 P.2d 928].) The instruction given was an accurate statement of law. If Carrasco believed that modification to CALJIC No. 3.31 was required, he was obligated to request it. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1142 [36 Cal.Rptr.2d 235, 885 P.2d 1].) He did not do so. Thus, he waived the objection.

█ Even if the contention had not been waived, it is without merit. In determining the correctness of jury instructions, we consider the instructions as a whole. (*People v. Burgener* (1986) 41 Cal.3d 505, 540 [224 Cal.Rptr. 112, 714 P.2d 1251], overruled on another point in *People v. Reyes* (1998) 19 Cal.4th 743 [80 Cal.Rptr.2d 734, 968 P.2d 445].) When reviewing a purportedly ambiguous jury instruction, we ask whether there is a reasonable likelihood the jury misconstrued or misapplied the challenged instruction. (*People v. Harrison* (2005) 35 Cal.4th 208, 251–252 [25 Cal.Rptr.3d 224, 106 P.3d 895].)

The jury was instructed with CALJIC No. 9.40. CALJIC No. 9.40 states that one is guilty of robbery if one takes property by means of force, with the specific intent to deprive the victim of property. The robbery instruction itself requires concurrence or joint operation of act and specific intent. No reasonable juror who received CALJIC Nos. 9.40 and 3.31 could have concluded that the enhancements did not require concurrence or joint operation of act and specific intent. (See *People v. Clair* (1992) 2 Cal.4th 629, 677 [7 Cal.Rptr.2d 564, 828 P.2d 705]; *People v. Kelly* (1992) 1 Cal.4th 495, 525–527 [3 Cal.Rptr.2d 677, 822 P.2d 385].)

### *Section 12022.53, Subdivision (b) Firearm Enhancement Should Have Been Stayed*

█ The People contend the firearm enhancement under section 12022.53, subdivision (b) should have been stayed, not stricken. We agree. In *People v. Bracamonte* (2003) 106 Cal.App.4th 704 [131 Cal.Rptr.2d 334], the court discussed the apparent conflict in section 12022.53, subdivisions (f) and (h). Subdivision (f) states that only one enhancement may be imposed under section 12022.53, but subdivision (h) prohibits striking any enhancement imposed under section 12022.53. Harmonizing the two sections, the *Bracamonte* court held that each section 12022.53 enhancement should be imposed with a stay of execution for all but the enhancement with the greatest term of imprisonment. (*Bracamonte*, at p. 713; see Cal. Rules of Court, rule 4.447.)[4]

---

[4] California Rules of Court, rule 4.447 provides: "No finding of an enhancement shall be stricken or dismissed because imposition of the term is either prohibited by law or exceeds limitations on the imposition of multiple enhancements. The sentencing judge shall impose sentence for the aggregate term of imprisonment computed without reference to those

Following *Bracamonte*, the trial court should have imposed each of the enhancements and then stayed all except the section 12022.53, subdivision (c) enhancement.

We modify the judgment by staying the section 12022.53, subdivision (b) enhancement. The trial court shall amend the abstract of judgment accordingly and forward it to the Department of Corrections. The judgment is otherwise affirmed.

Gilbert, P. J., and Yegan, J., concurred.

On April 19, 2006, the opinion was modified to read as printed above.

prohibitions and limitations, and shall thereupon stay execution of so much of the term as is prohibited or exceeds the applicable limit. The stay shall become permanent upon the defendant's service of the portion of the sentence not stayed." (See *People v. Lopez* (2004) 119 Cal.App.4th 355, 364–366 [14 Cal.Rptr.3d 202].)