Filed 1/9/23 P. v. Pauldo CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E078226 |
| v. | (Super.Ct.No. FVI20000790) |
| BUDDIE PAULDO III, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Shannon L. Faherty, Judge. Affirmed.

Lizabeth Weis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers and Elizabeth M. Kuchar, Deputy Attorneys General, for Plaintiff and Respondent.

1

## INTRODUCTION

Defendant and appellant Buddie Pauldo III was charged by amended information with attempted murder (Pen. Code,[1] §§ 664, 187, subd. (a), count 1) and assault with a deadly weapon (§ 245, subd. (a)(1), count 2). It was further alleged that he personally inflicted great bodily injury (GBI) in both counts (§ 12022.7, subd. (a)) and personally used a deadly weapon in count 1 (§ 12022, subd. (b)(1)). The information also alleged that defendant had three prior serious felony convictions (§ 667, subd. (a)(1)) and three prior strike convictions (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).

A jury acquitted defendant of attempted murder (count 1) but found him guilty of assault with a deadly weapon (count 2) and found true the attendant GBI enhancement. In a bifurcated proceeding, a trial court found true the six prior convictions allegations. The court subsequently sentenced defendant to 25 years to life on count 2, plus a three-year term on the GBI enhancement and three consecutive five-year terms on the prior serious felony convictions, for a total term of 18 years plus 25 years to life in state prison.

On appeal, defendant contends the court prejudicially erred by omitting the bracketed portion of CALCRIM No. 3470 that would have allowed the jury to consider prior threats from a third party in deciding whether he acted in self-defense. Defendant claims the failure to give this portion of the jury instruction deprived him of proper consideration of his defense and violated his constitutional rights to due process, a jury trial, and to present a defense; thus, his conviction must be reversed. In the alternative,

---

[1] All further statutory references will be to the Penal Code unless otherwise indicated.

2

defendant contends his counsel rendered ineffective assistance of counsel (IAC) in failing to ensure the jury was properly and completely instructed on self-defense. We affirm.

FACTUAL BACKGROUND

*Prosecution Case*

On March 23, 2020, James A. (the victim) and his girlfriend S.B. walked behind a 99 Cent Store. They saw their friends Dee and Alyiah there and walked up to talk to them. Defendant was also there, and he appeared to be intoxicated. The victim and his girlfriend were familiar with defendant and knew him as "Uncle Buddie." Defendant began groping Alyiah and touching her face. Alyiah's boyfriend Dee looked shocked about defendant's conduct, but did not do anything. S.B. got defendant's attention, and defendant stood up, looked at her, and asked who she was. Then defendant grabbed her face and chest. S.B. slapped his hand away, asked what he was doing, and told him not to touch her like that. She immediately turned around, and the victim, who was behind her, stepped in between her and defendant. Defendant pulled out a knife from his pants pocket and put it to the victim's neck.

Defendant said, "Yeah, you don't mess with me." He also said, "Yeah, I cut you. I cut you. He's bleeding. He's bleeding." S.B. turned around and looked at the victim and said, "You're bleeding?" The victim was holding his neck because he was not sure if he was cut, and he did not want to let go. So S.B. yanked his hand down. At trial, S.B. testified that defendant's neck "just kind of . . . opened" and she "saw everything in his neck." S.B. panicked and ran to the 99 Cent Store to ask someone to call an ambulance. The victim's friend, M.H., was inside the store shopping when S.B. went in the store.

3

The victim also went into the store. M.H. saw him and asked what happened and then went outside to confront defendant. The victim was taken to the hospital, where he stayed overnight.

The police arrived at the scene, and an officer conducted a patdown search of defendant. The officer found three knives in defendant's pants and jacket pockets.

*Defense Case*

Defendant testified on his own behalf at trial. He said that on the day of the incident, he got off the bus and started walking toward the 99 Cent Store. He stopped at the bank to get a cashier's check for $2,950 and withdrew $10 in cash.[2] He also stopped at a liquor store and got a beer, went to the laundromat next to the 99 Cent Store, and started washing a load of clothes. Defendant then went outside, drank his beer, and started talking to Dee and a man who worked for the carnival. The two men left, and while defendant was finishing his beer and urinating, the victim came up behind him. Defendant had seen the victim before, but he was not somebody he hung out with. Defendant had also seen S.B. with the victim before. The victim approached him, told S.B. to go get M.H., and pulled out a knife and pointed it at him. When defendant heard the victim tell S.B. to go get M.H., he was afraid he was going to get stabbed and robbed again. At trial, defendant explained that on January 23, M.H. stabbed him across the street, and that he and M.H. had a "physical" disagreement in 2004.

---

[2] We note that the officer who performed the patdown search of defendant testified that he did not recall finding any money or a cashier's check on defendant's person.

4

When the victim turned to S.B. to tell her to get M.H., defendant pulled out his box cutter. Then, as the victim turned back, "the box cutter grazed his neck." Defendant testified, "He was talking to her, he had his neck turned towards [S.B.], and when he turned around I had my box cutter extended, and he bumped it, when he turned around." The victim dropped his knife and put his hand to his neck. The victim and S.B. then walked away. After they walked away, defendant picked up the victim's knife and put it in his pocket. Defendant then tried to compose himself. At some point, M.H. came behind the laundromat and accosted defendant, saying he was going to finish what he started in January. They started arguing, but M.H. did not bring up the victim at all; rather, he just wanted to argue "about his own agenda." M.H. pulled out a knife, threw it at defendant, and then ran toward the front of the 99 Cent Store. Defendant picked up M.H.'s knife and put it in his pocket and walked away. The victim said he then walked right into the police officer.

At trial, defendant testified that he did not attempt to touch S.B. When asked why he took out his box cutter, he said, "To fend of[f] [the victim], because I had just been stabbed two months prior, and I had a large sum of money, and he was trying to be a little aggressive." Defendant testified that he had never had issues with the victim or S.B before. Furthermore, at the time the victim told S.B. to go get M.H., defendant had no idea where M.H. was—whether he was close by or 10 miles away.

Defendant testified that when he was arrested, he talked to the police, but he was not "a snitch" so he did not tell them that the victim pulled a knife out and pointed it at him, or that the victim grazed his neck on his knife, or that the victim told S.B. to get

5

M.H. Defendant also said he had all three knives on him, but he did not tell the police that he had picked up the victim's and M.H.'s knives.

## DISCUSSION

### The Court Properly Instructed the Jury on Self-Defense, and Any Alleged Error Was Harmless

Defendant contends the trial court prejudicially erred and violated his constitutional rights by omitting the bracketed portion of CALCRIM No. 3470 which stated: "If you find that the defendant received a threat from someone else that (he/she) reasonably associated with *<insert name of victim>*, you may consider that threat in deciding whether the defendant was justified in acting in (self-defense/ [or] defense of another)." (Hereinafter, the bracketed portion.) Defendant states that his self-defense theory was based on his fear of the victim, who was pointing a knife at him, as well as his feeling that M.H. would "show up" at S.B.'s request and stab him again, as he had done previously. Defendant claims the bracketed portion would have informed the jury that if it found that he had been threatened by M.H., whom he reasonably associated with the victim, the jury could consider that threat in deciding whether he was justified in acting in self-defense. We conclude that defendant forfeited his claim, and in any event, the court properly instructed the jury. We further determine any alleged instructional error was harmless.

A. *Procedural Background*

At the jury instruction conference, defense counsel argued that the first bracketed paragraph in CALCRIM No. 505, which is the self-defense instruction for attempted

6

murder, was not applicable because the count involving M.H. had been dismissed on account of his death. That paragraph read: "If you find that *<insert name of victim>* threatened or harmed the defendant [or others] in the past, you may consider that information in deciding whether the defendant's conduct and beliefs were reasonable." (CALCRIM No. 505.) Defense counsel added, "And as far as [the victim] goes, there is no testimony that he was a part of the earlier incident, just that [M.H.] was." The trial court agreed there was no evidence to support that bracketed paragraph or the one after that, which states: "If you find that the defendant knew that *<insert name of victim>* had threatened or harmed others in the past, you may consider that information in deciding whether the defendant's conduct and beliefs were reasonable." (CALCRIM No. 505.) Defense counsel agreed, as did the prosecutor, that both paragraphs should be removed. The court continued, "Which then takes out" the next two paragraphs, which read: "Someone who has been threatened or harmed by a person in the past, is justified in acting more quickly or taking greater self-defense measures against that person," and "If you find that the defendant received a threat from someone else that (he/she) reasonably associated with *<insert name of victim>*, you may consider that threat in deciding whether the defendant was justified in acting in (self-defense/ [or] defense of another)." (CALCRIM No. 505.)

Subsequently, as to CALCRIM No. 3470 ("Right to Self-Defense or Defense of Another [Non-Homicide]"), the court stated, "I think we need to remove the same bracketed paragraphs that were taken out of 505." Defense counsel stated, "Yes, your Honor. I agree." The prosecutor also agreed.

7

B. *Relevant Law*

In criminal cases, "a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case." (*People v. Martinez* (2010) 47 Cal.4th 911, 953 (*Martinez*).) "A trial court's duty to instruct, sua sponte, on particular defenses arises ' "only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case." ' " (*People v. Maury* (2003) 30 Cal.4th 342, 424.) We review arguments of instructional error de novo. (See *People v. Hamilton* (2009) 45 Cal.4th 863, 948 ["[w]e independently review the legal correctness of an instruction"].)

C. *Defendant Forfeited His Claim*

Defendant contends the court erred in omitting the bracketed portion of CALCRIM No. 3470 and therefore failed to properly and fully inform the jury about self-defense. " ' "Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language." ' " (*People v. Carrasco* (2006) 137 Cal.App.4th 1050, 1060.)[3] Because defendant failed to object below, his claim of error on the instruction has been forfeited. (*People v. Mitchell* (2019) 7 Cal.5th 561,

---

[3] We understand defendant's argument on appeal is that the instruction given was not responsive to the evidence since the bracketed portion was omitted. However, we conclude the instruction that was given was responsive to the evidence. (See § D, *post.*)

8

579.) Defendant not only failed to object, he expressly *agreed* with the court that the bracketed portion should be removed from CALCRIM No. 3470.**4**

Notwithstanding the forfeiture, defendant's claim has no merit.

D. *The Court Properly Instructed the Jury on Self-Defense*

Defendant asserts the court had a sua sponte duty to properly instruct the jury and argues that it instructed the jury with an "incomplete self-defense instruction that directed the jury to consider whether [his] actions were justified by his perception of imminent danger or great bodily harm from [the victim]." He specifically claims the omission of the bracketed portion of the instruction "undermined" his defense because "without it, the jury did not know that [M.H.'s] long and recent history of threats and violence toward [him] were relevant to whether [he] was justified in acting in self-defense." We conclude the court properly instructed the jury on self-defense.

The trial court was required to "instruct on general principles of law relevant to the issues raised by the evidence." (*Martinez, supra*, 47 Cal.4th at p. 953.) The bracketed portion that was omitted from CALCRIM No. 3470 essentially stated: "If you find that the defendant received a threat from someone else that (he/she) reasonably associated with [the victim], you may consider that threat in deciding whether the defendant was

---

**4** We note respondent's claim that defendant is barred from challenging the jury instruction given under the doctrine of invited error. However, " 'the doctrine of invited error bars a defendant from challenging an instruction given by the trial court when the defendant has made a "conscious and deliberate tactical choice" to "request" the instruction.' " (*People v. Weaver* (2001) 26 Cal.4th 876, 970, italics added.) Defendant here did not actually request the bracketed portion of CALCRIM No. 3470 be removed from the instruction, but rather agreed with the court that it should be removed.

justified in acting in (self-defense . . .)" The trial court was not required to give this portion of the instruction because there was no evidence that defendant received a threat from someone he reasonably associated with the victim. Defendant cites his testimony that when the victim pointed a knife at him and told S.B. to "go get [M.H.]," he (defendant) "had in mind" M.H.'s prior acts of violence against him, which "factored into his belief" that the victim was going to stab or rob him. However, M.H.'s prior act of stabbing defendant did not constitute a current or prior threat, within the meaning of the bracketed portion of the instruction. Furthermore, we note that in arguing that the first bracketed paragraph in the jury instruction on self-defense for attempted murder (CALCRIM No. 505) should be omitted, defense counsel stated there was no evidence that the victim was part of the earlier incident with M.H.

In other words, *M.H.'s* prior act against defendant had nothing to do with defendant pulling out a knife and cutting *the victim*. There was simply no evidence that M.H. made a prior threat against defendant that was in any way associated with the victim. In view of the evidence, the court properly removed the bracketed portion of CALCRIM No. 3470.

Moreover, contrary to defendant's claim, he was not deprived of his right to present a defense.[5] Defendant presented his testimony that he took out his box cutter in

_____

[5] Defendant also claims he was deprived of his rights to due process and a jury trial. However, he fails to provide any legal argument in support of these claims. Thus, we will treat them as waived. (*People v. Stanley* (1995) 10 Cal.4th 764, 793; see *People v. Earp* (1999) 20 Cal.4th 826, 884 [An appellate court "need not consider on appeal mere contentions of error unaccompanied by legal argument."].)

self-defense, specifically "to fend off" the victim because he (defendant) had been stabbed "two months prior."**6** Thus, he claimed self-defense, and the jury was accurately instructed on this defense with CALCRIM No. 3470. As delivered to the jury, this instruction provided: " 'Self-defense is also a defense to assault with a deadly weapon, and the lesser included offense of assault. The defendant is not guilty of those crimes if he used force against the other person in lawful self-defense. The defendant acted in lawful self-defense if: One. The defendant reasonably believed that he was in imminent danger of suffering bodily injury, or was in imminent danger of being touched unlawfully. Two. The defendant reasonably believed that the immediate use of force was necessary to defend against the danger. AND Three. The defendant used no more force than was reasonably necessary to defend against that danger. . . . The People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. If the People have not met this burden, you must find the defendant not guilty of assault with a deadly weapon, and not guilty of the lesser offense of assault." Thus, the jury was properly instructed on self-defense. Moreover, it was not precluded from considering defendant's testimony regarding M.H.'s prior stabbing of defendant.

E. *Any Error Was Harmless*

Even assuming defendant's instructional error claim has merit, we conclude there is no reasonable likelihood of a more favorable result had the jury been instructed with

---

**6** We note that when defendant testified that M.H. stabbed him, he simply said he was stabbed on January 23, but did not specify what year. We observe that the trial in the instant case took place in November 2021. Thus, it is unclear what stabbing from "two months prior" defendant was referencing when testifying about fending off the victim.

11

the bracketed portion of CALCRIM No. 3470. Since there was no evidence of a third-party threat by M.H. that was associated with the victim, there is no reasonable probability that the giving of the bracketed portion of the instruction would have made a difference. The trial in this case was largely a credibility contest between defendant, and the victim and S.B. The jury appears to have believed the victim's and S.B.'s account of the incident. They both testified that defendant was the aggressor. He grabbed S.B.'s face, and S.B. slapped his hand away. When the victim got in between him and S.B., defendant pulled out a knife from his pants pocket and put it to the victim's neck. S.B. testified that defendant said, "Yeah, I cut you. I cut you. He's bleeding. He's bleeding." The prosecution and defense version of events were markedly different and the jury accepted the prosecution's version and rejected defendant's version.

Furthermore, even if the court had given the bracketed portion of the self-defense instruction, there is no reasonable probability that the result would have been different. " 'To justify an act of self-defense for [an assault charge under Penal Code section 245], the defendant must have an honest *and reasonable* belief that bodily injury is about to be inflicted on him. [Citation.]' [Citation.] The threat of bodily injury must be imminent [citation] . . . ." (*People v Minifie* (1996) 13 Cal.4th 1055, 1064.) Defendant testified that he took out his box cutter "to fend off" *the victim* because he (defendant) had been stabbed "two months prior." He claims he associated M.H. with the victim, and M.H.'s prior acts of violence against him (defendant) "factored into his belief that [*the victim*] was going to stab or rob him." However, there was no evidence that the victim had ever stabbed or robbed defendant, and defendant even testified that he had never had any

12

issues with the victim. He also testified that when the victim told S.B. to go get M.H., he (defendant) had no idea where M.H. was (i.e., if he was near or far). Therefore, defendant's own testimony did not support a finding that he *reasonably* believed he was in *imminent* danger and acted in self-defense. Accordingly, even if the court had given the bracketed portion of the instruction, there is no reasonable probability defendant would have obtained a more favorable result.

F. *Defendant Cannot Demonstrate Ineffective Assistance of Counsel* (*IAC*)

In the alternative, defendant argues that his argument is cognizable as a claim of IAC since there could have been no rational basis for his trial counsel's failure to ensure the jury was properly instructed on "the essential parts of self-defense," and the omission of the bracketed portion of the instruction was prejudicial. A defendant claiming IAC has the burden of proving (1) his attorney's performance fell below an objective standard of reasonableness, and (2) there was a reasonable probability the defendant would have obtained a more favorable result absent counsel's error. (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 694.) Defendant cannot demonstrate IAC under either prong. First, he cannot show his counsel's performance was objectively unreasonable. Since there was no evidence to support the giving of the bracketed portion of the instruction, defendant's counsel properly agreed that the court should remove it. (See *ante*, § D.) Second, there was no reasonable probability that defendant would have obtained a more favorable result if the bracketed portion of the instruction had been given. (See *ante*, § E.)

13

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS_____
                                                    Acting P. J.


We concur:


RAPHAEL_____
                                J.


MENETREZ_____
                                J.