Filed 1/14/25  P. v. Verdin CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062866 |
| v. | (Super. Ct. No. 06CF0342) |
| RENE VERDIN, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Jonathan S. Fish, Judge. Reversed and Remanded.

Rene Verdin, in pro. per.; Ellen M. Matsumoto, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier, Kathryn Kirschbaum and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

In 2007, Rene Verdin pleaded guilty to three attempted murders. In 2023, he filed a petition for relief under Penal Code section 1172.6, seeking to vacate his attempted murder convictions and alleging that he could not be convicted of attempted murder under current law.[1] The trial court summarily denied Verdin's petition after concluding that his admission in the factual basis for his plea that he acted with intent to kill rendered him ineligible for relief.

Verdin challenges this conclusion, asserting that his admissions did not preclude his eligibility for relief under section 1172.6. As explained below, we agree that Verdin's admissions—including his admission to acting with intent to kill—did not establish all the elements of a valid theory of attempted murder under current law. Accordingly, we reverse the summary denial of his petition and remand for further proceedings.

FACTS

I.

THE INFORMATION

In August 2007, an amended information charged Verdin with conspiracy to commit murder, the premeditated and deliberate attempted murders of Jorge C., M.C., and A.M., and other offenses.[2] The information contained various enhancement allegations, including that Verdin personally discharged a firearm in committing the attempted murder of Jorge

---

[1] Undesignated statutory references are to the Penal Code.

[2] As to the attempted murders, the information alleged that Verdin "did willfully and unlawfully, and with premeditation, deliberation, and the specific intent to kill, attempt to murder" the three victims.

(§ 12022.53, subd. (c)), and that he personally used a firearm in committing all three attempted murders (§ 12022.5, subd. (a)).[3]

## II.

### MISTRIAL AND GUILTY PLEA

Following a trial, the jury was unable to reach unanimous verdicts on any of the charges, and the trial court declared a mistrial. In October 2007, the parties reached a plea agreement, and Verdin pleaded guilty to the attempted murders (without the premeditation and deliberation allegations) and another offense not relevant here.[4] He also admitted the firearm allegations noted above.

As part of Verdin's plea, he signed an advisement and waiver of rights. In that document, he offered the following facts as the basis for his guilty plea: "[In December] 2005, I willfully & unlawfully & with the specific intent to kill, did attempt to kill [Jorge, M.C., and A.M.] . . . . During the attempt to kill [Jorge], I personally discharged a firearm. During the attempts to kill [M.C.] & [A.M.] . . . , I personally used a firearm." The trial court accepted Verdin's plea, dismissed all other charges, and sentenced him to 27 years in prison, pursuant to the parties' agreement.

---

[3] Personal use of a firearm "may be found where the defendant intentionally displayed a firearm in a menacing manner in order to facilitate the commission of an underlying crime." (*People v. Carrasco* (2006) 137 Cal.App.4th 1050, 1059.)

[4] Verdin did not plead guilty to conspiracy to commit murder.

## III.

### VERDIN'S SECTION 1172.6 PETITION

In 2023, Verdin filed a petition for relief under section 1172.6, alleging that he had pleaded guilty based on an information that allowed the prosecution to proceed under the natural and probable consequences doctrine. After appointing counsel and receiving briefing, the trial court conducted a prima facie hearing and denied the petition, finding that Verdin had not established a prima facie case of eligibility for relief. In a written statement of decision, the court noted Verdin's admissions in the factual basis for his plea and concluded: "Therefore, there is an insufficient prima facie showing that the prosecution relied upon a theory of culpability for attempted murder that is inconsistent with the present definition (requiring a specific intent to kill)."

Verdin timely appealed. His appointed counsel filed an opening brief under *People v. Delgadillo* (2022) 14 Cal.5th 216, raising no issues and asking this court to review the record independently. After independently reviewing the record, this court requested further briefing regarding Verdin's prima facie eligibility for relief.[5]

### DISCUSSION

Verdin challenges the trial court's summary denial of his section 1172.6 petition. He contends that, contrary to the court's conclusion, his admissions in the factual basis for his plea did not render him ineligible for

---

[5] Before this court issued its briefing order, Verdin filed a supplemental brief in propria persona stating that his appellate counsel was rendering ineffective assistance. Because we grant Verdin the relief he seeks on appeal, we need not address his contention regarding counsel's performance.

relief, and he was therefore entitled to an evidentiary hearing. As discussed below, we agree and therefore reverse the court's order and remand for further proceedings.

## I.

### GOVERNING LAW

"Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Superior Court* (*Decker*) (2007) 41 Cal.4th 1, 7.) As with other crimes, an aider and abettor to attempted murder—a person who aids the perpetrator with knowledge of the perpetrator's unlawful purpose and with the intent that it be facilitated—is guilty of the intended crime. (*People v. Smith* (2014) 60 Cal.4th 603, 611.) Until recently, an aider and abettor could be found guilty of murder or attempted murder based on their participation in a different target crime, if murder or attempted murder resulted and were a natural and probable consequence of the target crime. (*Ibid.*; *People v. Rodriguez* (2024) 103 Cal.App.5th 451, 456.)

The Legislature recently eliminated the natural and probable consequences theory of murder and attempted murder liability. (*People v. Rodriguez, supra*, 103 Cal.App.5th at p. 456.) Thus, an attempted murder conviction now requires proof that the defendant personally harbored an intent to kill. (*People v. Das* (2023) 96 Cal.App.5th 954, 960.) And if the prosecution contends the defendant is guilty as an aider and abettor, it must also prove that the defendant "'aid[ed] the commission of th[e] offense with "knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends."'" [Citation.]" (*People v. Curiel* (2023) 15 Cal.5th 433, 463 (*Curiel*) [addressing murder liability].)

5

Effective January 1, 2022, a defendant convicted of attempted murder may petition to have the conviction vacated if: (1) the charging document permitted the prosecution to proceed under the "natural and probable consequences" doctrine; (2) the defendant accepted a plea offer instead of going to trial; and (3) the defendant could not now be convicted of attempted murder "because of changes to Section 188 or 189 made effective January 1, 2019," which eliminated the natural and probable consequences theory of attempted murder liability. (§ 1172.6, subd. (a); former § 1170.95, subd. (a), as amended by Stats. 2021, ch. 551, § 2.) The sentencing court must then determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subd. (c).)

The prima facie inquiry is "limited" (*People v. Lewis* (2021) 11 Cal.5th 952, 971), and the bar "'was intentionally . . . set very low'" (*id.* at p. 972). In assessing the petition at this stage, the court ""'makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.'"" (*Id.* at p. 971.) If so, it must issue an order to show cause and hold an evidentiary hearing. (*Ibid.*)

The trial court may examine the record of conviction to assess whether it refutes the petitioner's claim of eligibility. (*People v. Lewis, supra*, 11 Cal.5th at p. 971.) But "[t]he court may deny the petition at the prima facie stage only if the record of conviction conclusively establishes that the petitioner is ineligible for relief as a matter of law. [Citation.]" (*People v. Gaillard* (2024) 99 Cal.App.5th 1206, 1211.) To refute the defendant's allegation that he could not now be convicted of attempted murder, the record must "conclusively establish[] every element of the offense." (*Curiel, supra*, 15 Cal.5th at p. 463.)

6

"'When the petitioner's conviction resulted from a guilty plea rather than a trial, the record of conviction includes the facts "the defendant admitted as the factual basis for a guilty plea."' [Citation.] We independently review the trial court's determination that the petitioner failed to make a prima facie showing for relief. [Citation.]" (*People v. Ramos* (2024) 103 Cal.App.5th 460, 464–465 (*Ramos*).)

## II.

### ANALYSIS

We conclude the trial court erred by denying Verdin's petition at the prima facie stage based on the factual admissions in his guilty plea. Verdin admitted that he, "with the specific intent to kill, did attempt to kill [Jorge, M.C., and A.M.]." This admission largely tracked the charges in the operative information and provided no specific factual information about the crimes. It did not conclusively cover all the elements of a still-valid theory of attempted murder.[6]

First, the factual basis for Verdin's plea did not conclusively establish that he was the actual perpetrator of the attempted murders. Verdin admitted to discharging a firearm during the attempted murder of one victim, Jorge. Yet he made no similar admission in connection with the attempted murders of M.C. and A.M. Indeed, the operative information did

---

[6] It is undisputed that Verdin has made a sufficient showing as to the other prongs of his prima facie case for relief under section 1172.6.

7

not even allege that he had discharged a firearm during the latter crimes.[7] This implied that he was *not* the perpetrator of at least two of the attempted murders. Instead, the phrase "attempt to kill" may have been intended as a general reference to attempted murder liability, which also encompassed other theories.[8] Thus, Verdin's admission did not conclusively establish that he was the perpetrator of the attempted murders.

Next, the factual basis for Verdin's plea also did not establish the elements of direct aiding and abetting. Contrary to the trial court's analysis, Verdin's admission to acting "with the specific intent to kill" did not render him ineligible for relief. (See *Curiel, supra,* 15 Cal.5th at p. 463 ["A finding of intent to kill does not, standing alone, cover all of the required elements" and "does not itself show that a petitioner . . . is liable for murder under any valid theory"].) As noted, a theory of direct aiding and abetting requires a showing that the defendant aided the commission of the offense with knowledge of the direct perpetrator's unlawful intent and with an intent to assist in achieving

---

[7] Instead, the information alleged and Verdin admitted only that he "used" a firearm during those crimes, which, as noted, could have meant no more than "intentionally display[ing] a firearm in a menacing manner." (*People v. Carrasco, supra,* 137 Cal.App.4th at p. 1059.)

[8] The same analysis applies to the attempted murder of Jorge, as Verdin admitted to discharging his firearm but did not admit to firing *at* Jorge. This distinguishes this case from *People v. Saavedra* (2023) 96 Cal.App.5th 444, which the Attorney General cites. The defendant there admitted to attempting to murder three victims "by personally discharging a firearm at the vehicle [they] were occupying." (*Id.* at p. 447.) Thus, unlike Verdin, the defendant specified that he committed attempted murder *by shooting at the victims*. This admission rendered him ineligible for relief. (*Ibid.*)

the unlawful purpose. (*Ibid.*) Nothing in Verdin's admissions covers this requirement.

For this reason, we are unpersuaded by the dissent's assertion that Verdin's admission to acting with the specific intent to kill "removes any possibility that his admitted liability was premised on imputed malice." (Dis. opn., *post*, at p. 3.) The question is not whether Verdin's plea showed that his liability rested on imputed malice. As our Supreme Court explained in *Curiel*: "[the Legislature] did not simply 'add the element of malice aforethought' to existing theories of murder liability. [Citation.] It eliminated the doctrine of natural and probable consequences in its entirety . . . . [Citation.]" (*Curiel, supra*, 15 Cal.5th at p. 462.) Thus, "[m]urder liability requires a different, valid theory, such as direct aiding and abetting," and "a petitioner who alleges that he or she could not currently be convicted of a homicide offense 'because of changes to Section 188 or 189 made effective January 1, 2019' [citation] puts at issue all elements of the offense under a valid theory." (*Ibid.*) The existence of the natural and probable consequences doctrine at the time of Verdin's plea meant that there was no need to establish the other elements of direct aiding and abetting, beyond the specific intent to kill. His admission to the latter was s therefore insufficient to render him ineligible for relief.

We are likewise unpersuaded by the dissent's emphasis of the admitted facts' reference to an attempt to *kill*. (Dis. opn., *post*, at pp. 3–4.) The dissent states: "[T]he 'attempt to kill [the victims]' portion [of the admitted facts] is a factual admission that [Verdin's] actions, whatever they may have been, were connected to the attempted killings themselves. They were not simply connected to some other target offense, as would be the case

9

in a natural and probable consequences situation." (Dis. opn., *post*, at p. 3.) It suggests the reference to an attempt to *kill*, instead of *murder*, must refer to the actual act of killing rather than to murder liability generally.

We respectfully disagree that the term "kill" necessarily refers to the lethal act itself. Indeed, the prosecution's charging documents sometimes refer to an attempt to "kill," and on at least one occasion, the Attorney General conceded that this was "generic" language that "did not limit the prosecution's ability to proceed under . . . the natural and probable consequences doctrine." (*People v. Torres* (June 16, 2023, G061580) [nonpub. opn.].) We are unaware of any decision holding to the contrary. Thus, as noted, Verdin's admissions could refer to attempted murder liability generally.

Regardless, even a strict reading of the term "kill" as referring to the lethal act itself would not render Verdin ineligible for relief because it does not establish all the elements of a still-valid theory of attempted murder. It is undisputed that Verdin acted with the intent to kill the victims. From his standpoint, an action aiding the targeting of the victims could be "connected to the attempted killings themselves" (dis. opn., *post*, at p. 3), but does not establish his awareness of the perpetrator's own unlawful intent, which is a necessary element under a theory of direct aiding and abetting. (*Curiel, supra*, 15 Cal.5th at p. 463.)

To be sure, the phrasing of Verdin's admissions, especially the reference to his intent to kill, suggests the parties had a theory of at least direct aiding and abetting in mind. But to "conclusively establish[]" that Verdin is ineligible for relief, the factual basis must reflect his admission of

10

"every element" of a valid theory. (*Curiel, supra*, 15 Cal.5th at p. 462.) It did not do so here.

The Attorney General contends this case is similar to *Ramos, supra*, 103 Cal.App.5th at page 466, which found a defendant conclusively ineligible for relief. We disagree. In *Ramos*, the defendant admitted he "'aided/abetted, with the specific intent to kill, the attempt to kill'" the victim. (*Id.* at p. 463.) The *Ramos* court concluded these admissions "embod[ied] all the elements of direct aiding and abetting liability for attempted murder." (*Id.* at p. 466.) As particularly relevant here, the court reasoned, "[The defendant's] admission he 'abetted' the attempt to kill establishes he acted with 'knowledge of the perpetrator's unlawful purpose [vis-à-vis the attempted killing] and with the intent that it be facilitated.' [Citation.]"[9] (*Ibid.*) Unlike the defendant in *Ramos*, Verdin did not admit that he *abetted* the attempts to kill—he admitted only that he acted with intent to kill, which is insufficient to establish a theory of direct aiding and abetting. (*Curiel, supra*, 15 Cal.5th at p. 463.)

We are also unpersuaded by the Attorney General's citation to *People v. Romero* (2022) 80 Cal.App.5th 145. There, the defendant admitted that "'during the commission of [first degree murder], [he] acted intentionally, deliberately and with premeditation.'" (*Id.* at p. 149.) The court held this admission "establishe[d] that he acted with actual malice sufficient to sustain the murder conviction under [current] law." (*Id.* at p. 153.) To the

---

[9] As the court in *Ramos* explained, the term "abet" addresses the mental state required for direct aider and abettor liability, "'knowledge of the perpetrator's unlawful purpose and . . . the intent that it be facilitated. [Citation.]' [Citation.]" (*Ramos, supra*, 103 Cal.App.5th at p. 466.)

extent *Romero* suggested that actual malice was sufficient, on its own, to sustain murder liability under current law, it was mistaken. (*Curiel, supra,* 15 Cal.5th at p. 463.) Accordingly, we reverse the summary denial of his petition and remand for further proceedings.

## DISPOSITION

The trial court's denial of Verdin's petition is reversed, and the matter is remanded for the court to issue an order to show cause and hold an evidentiary hearing consistent with section 1172.6, subdivision (d).


O'LEARY, P. J.

I CONCUR:


MOTOIKE, J.

DELANEY, J., Dissenting.

I agree with the majority that the outcome of this appeal hinges on whether Verdin's guilty plea, including the factual basis admitted by him in conjunction with it, conclusively establishes all elements of a still-valid theory of attempted murder. However, I respectfully disagree with its conclusion that Verdin's plea is insufficient to meet that legal threshold. On the record before us, I would affirm the trial court's denial of Verdin's resentencing petition at the prima facie stage.

A guilty plea is "a judicial admission of every element of the offense charged." (*People v. Chadd* (1981) 28 Cal.3d 739, 748.) It "is the equivalent of a conviction," and by pleading guilty a defendant waives a sufficiency of the evidence challenge. (*People v. Ward* (1967) 66 Cal.2d 571, 574; *In re Troy Z.* (1992) 3 Cal.4th 1170, 1180-1181.)

Relevant here, attempted murder is generally comprised of two elements, namely "(1) a specific intent to kill and (2) a direct but ineffectual act toward accomplishing the intended killing." (*People v. Mejia* (2012) 211 Cal.App.4th 586, 605.) Unlike murder, because attempted murder requires express malice, it "cannot be proved based upon a showing of implied malice." (*Ibid.*)

Prior to 2019, there generally were three theories through which one could be convicted of attempted murder: (1) liability as the direct perpetrator; (2) liability as a direct aider and abettor; and (3) liability as a natural and probable consequences aider and abettor. (See *People v. Perez* (2005) 35 Cal.4th 1219, 1225; *People v. McCoy* (2001) 25 Cal.4th 1111, 1117-1118.) While the first two of those theories required the defendant to personally have a specific intent to kill and to engage in some act vis-à-vis the

1

attempted killing (see *People v. Lee* (2003) 31 Cal.4th 613, 623-624 [discussing direct aiding and abetting attempted murder liability]), the last of those theories did not. Under the natural and probable consequences doctrine, a defendant who knowingly aided and abetted an intended nonmurder crime, commonly referred to as the target offense, was also guilty of any other crime the perpetrator actually committed that was a natural and probable consequence of the intended crime, commonly referred to as the nontarget offense, irrespective of whether the defendant had any intent regarding the nontarget offense. (See *People v. Curiel* (2023) 15 Cal.5th 433, 449 (*Curiel*); *McCoy,* at p. 1117; *People v. Canizalez* (2011) 197 Cal.App.4th 832, 852.) Depending on the circumstances of a given situation, attempted murder could be a nontarget offense. (*People v. Favor* (2012) 54 Cal.4th 868, 874.)

After legislative changes to the murder statutes which took effect in January 2019, the natural and probable consequences doctrine may no longer be used to convict someone of attempted murder, among other crimes. (*Curiel, supra*, 15 Cal.5th at p. 449; *People v. Coley* (2022) 77 Cal.App.5th 539, 548.) In contrast, direct perpetrator and direct aider and abettor theories of liability remain viable. (See *Curiel,* at p. 462; *Coley,* at p. 548.)

Here, in the factual basis for his guilty plea, Verdin admitted he, "with the specific intent to kill, did attempt to kill [the victims]." He further admitted he "personally used a firearm" "during the attempts to kill [two victims]," and he "personally discharged a firearm" "during the attempt to kill [the third victim]."

The firearm related portions of Verdin's admissions are not sufficient to conclusively establish any aspect of the attempted murder

2

offenses. As the majority notes, use of a firearm during two of the attempts could amount to simply "intentionally display[ing] a firearm in a menacing manner." (*People v. Carrasco* (2006) 137 Cal.App.4th 1050, 1059.) And, because an attempted murder may occur over a period of time, the discharge of a firearm during its commission does not decisively connect the discharge to the attempted murder itself. Notably, there are no words expressly linking Verdin's admission of the discharge of a firearm to his admission of the attempt to kill.

In contrast, unlike the majority, I read Verdin's other above mentioned admissions, included in a plea form signed under penalty of perjury that "everything on this form is true and correct," as providing specific factual information about the crimes. The "specific intent to kill" portion is a factual admission that he personally possessed a specific intent to kill. (See *People v. Ramos* (2024) 103 Cal.App.5th 460, 466.) It removes any possibility that his admitted liability was premised on imputed malice. Additionally, the "attempt to kill [the victims]" portion is a factual admission that his actions, whatever they may have been, were connected to the attempted killings themselves. They were not simply connected to some other target offense, as would be the case in a natural and probable consequences situation. (See *People v. Prettyman* (1996) 14 Cal.4th 248, 262 [natural and probable consequences aider and abettor commits act that aids or encourages commission of target crime]; c.f. *Curiel, supra*, 15 Cal.5th at p. 467 [in natural and probable consequences situation, act that aids or encourages target crime cannot be said to necessarily also aid or encourage nontarget crime].) In this respect, of particular importance is the use of the word "kill," as opposed to a legal term of art, such as "murder," which could be

3

interpreted in a more expansive manner. (See Pen. Code, § 187, subd. (a) [defining murder as "the unlawful killing of a human being, or a fetus, with malice aforethought"].)

Because Verdin's guilty plea is a judicial admission of every element of attempted murder, and because his factual admissions preclude the possibility that his plea was made on a natural and probable consequences theory, or some other imputed malice theory, the plea necessarily admits liability either under a direct perpetrator theory or direct aider and abettor theory. Both of those theories remain viable, meaning the record of conviction conclusively refutes Verdin's contention that he could not currently be convicted of murder "because of changes to [Penal Code] [s]ection 188 or 189 made effective January 1, 2019." (Pen. Code, § 1172.6, subd. (a)(3).) Accordingly, I would affirm the denial of his resentencing petition.[10] (See *Curiel, supra,* 15 Cal.5th at p. 460 [petition may be dismissed at prima facie stage if record of conviction conclusively establishes defendant is ineligible for relief].)

DELANEY, J.

---

[10] Prior to a supplemental briefing order issued by this court concerning Verdin's prima facie eligibility for resentencing relief, and his counsel's further briefing in response thereto, Verdin filed a brief asserting that this appeal had merit based on the following grounds: "Racial Justice Act," "Ineffective Assistance of Counsel, and "Signed Under Distress." However, it is an appellant's burden to demonstrate prejudicial error, which includes the obligation to provide reasoned argument and citations to legal authority. (*People v. Stanley* (1995) 10 Cal.4th 764, 793.) Providing a topical list of claimed errors, without more, does not satisfy that obligation and results in a waiver of the issues. (*Ibid.*)

4