Filed 6/4/25  P. v. Norrington CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE CARLOS NORRINGTON,<br><br>    Defendant and Appellant. | 2d Crim. No. B336960<br>(Super. Ct. No. BA293146)<br>(Los Angeles County) |

Jose Carlos Norrington appeals from an order denying his petition for resentencing under Penal Code[1] section 1172.6. Norrington contends the trial court erred in denying the resentencing petition at the prima facie stage after concluding the plea hearing transcript conclusively established he was ineligible for relief.  We agree and remand for further proceedings.

---

[1] Further unspecified statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL HISTORY[2]

In 2005, Norrington and his two companions, Marvin and Johnny, were involved in a shooting of three men from a rival "street racing crew" called the Wrath.

In 2006, prosecutors charged Norrington with the murder of Luis Lopez (§ 187, subd. (a); count 1), attempted carjacking (§ 664/215, subd. (a)); count 2), assault with a firearm (§ 245, subd. (a)(2); counts 3 and 4), the attempted willful, deliberate, and premeditated murders of Francisco Melendrez and Ricardo Lira (§§ 664/187, subd. (a); counts 5 and 6), and conspiracy to commit a carjacking (§ 182, subd. (a)(1); count 7). As to counts 4 and 5, it was alleged that Norrington personally inflicted great bodily injury upon Melendrez. (§ 12022.7, subd. (a).) And as to counts 1, 2, 5, and 6, it was alleged that he was armed with a firearm. (§ 12022, subd. (a)(1).)

In 2008, the parties reached a plea agreement during the People's case-in-chief. The prosecution amended the murder charge, and Norrington pleaded no contest to voluntary manslaughter (§ 192, subd. (a); count 1) and admitted that he personally used a firearm (§ 12022.5). Norrington also pleaded no contest to two counts of attempted murder (§§ 664/187, subd. (a); counts 5 and 6). At the prosecution's request, the court struck the allegation that the attempted murders were "willful, deliberate, and premediated."

The trial court also dismissed the remaining counts and enhancements. Norrington was sentenced to 25 years and eight

---

[2] We grant the Attorney General's unopposed request to take judicial notice of the transcripts from Norrington's 2008 trial. (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a).)

months in state prison (upper term of 11 years for count 1, plus 10 years for the personal firearm use allegation, plus consecutive middle terms of two years and four months for counts 5 and 6).

Norrington, who was not prosecuted as the actual shooter, made the following statement during his change of plea: "I took Johnny and Marvin down to an area where people from the team named Wrath were, knowing that Marvin had a gun. And he committed a crime, which I witnessed." Norrington also admitted that Marvin "shot at a car" and Johnny "drove the car" carrying Marvin. Counsel stipulated to a factual basis for the plea based on these statements, the preliminary hearing, and police reports.

In 2022, Norrington petitioned for resentencing pursuant to section 1172.6, declaring that he was prosecuted under the felony murder rule or natural and probable consequences doctrine, and convicted of attempted murder and manslaughter after accepting a plea offer in lieu of a trial at which he could have been convicted of murder or attempted murder. (§ 1172.6, subd. (a)(2).) He also declared that he could not presently be convicted of murder or attempted murder because of changes to sections 188 and 189. (*Id.*, subd. (a)(3).) Norrington was appointed counsel.

The trial court denied Norrington's petition and based its decision solely "on the plea transcript, the plea colloquy. . . on that and that alone." The court explained: "As a part of the plea, the petitioner admitted that he took two crime partners to a location where petitioner knew members of a rival gang could be located. He further admitted that he knew one of the crime partners had a gun and once at the location, petitioner watched as that person fired a gun at a car. The third crime partner drove the men to the location. The theory of criminal liability for each

3

of the three crimes that petitioner pled to was clearly aiding and abetting, a still valid theory of liability. Petitioner was not prosecuted under a theory of natural and probable consequences or felony murder." The court concluded that because "the record of conviction, specifically the plea transcript, demonstrates that petitioner shared the criminal intent and the act necessary for criminal liability as an aider and abettor to the manslaughter and the attempted murder charges, the petitioner fails to present a prima facie showing that he is entitled to relief."

DISCUSSION

*Senate Bill Nos. 1437 and 775*

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for convicting a defendant of murder. (Stats. 2018, ch. 1015, § 1; *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).) Amended section 188 requires that a principal, including an aider and abettor, possess malice aforethought and prohibits malice from being imputed to a person solely on their participation in a crime. (§ 188, subd. (a)(3); *Gentile*, at pp. 842–843; see also § 31.) Moreover, Senate Bill 1437 significantly limited the scope of the felony murder rule. Amended section 189 provides: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] [or] (3) The person was a major

4

participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (*Id.*, subd. (e).)

Senate Bill 1437 also allowed those convicted under the former law to petition to vacate their conviction and seek resentencing under the revised murder laws. (§ 1172.6[3]; *Strong, supra,* 13 Cal.5th at p. 708.) And effective January 1, 2022, Senate Bill No. 775 (2021–2022 Reg. Sess.) clarified that persons convicted of attempted murder or manslaughter under a theory of felony murder or the natural and probable consequences doctrine may also petition for resentencing relief. (See *People v. Estrada* (2024) 101 Cal.App.5th 328, 335 (*Estrada*); § 1172.6, subd. (a); Stats. 2021, ch. 551, § 2.) Thus, section 1172.6 applies to petitioners who could not presently be convicted of attempted murder or manslaughter because of changes to sections 188 or 189. (§ 1172.6, subd. (a)(3).)

After the filing of a properly pleaded petition, appointment of counsel, and briefing, the trial court holds a hearing to determine whether the petitioner has made a prima facie showing for resentencing relief. (§ 1172.6, subds. (b), (c).) If the petitioner makes a prima facie showing, the court shall issue an order to show cause and hold an evidentiary hearing where the People bear the burden to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder because of the changes to sections 188 and 189. (§ 1172.6, subds. (c), (d)(1) & (3).) If, however, the court determines the petition and record of conviction conclusively establish that the petitioner is

_____

[3] Section 1170.95 was renumbered section 1172.6 in 2022. (Stats. 2022, ch. 58, § 10.)

ineligible for relief, the trial court may dismiss the petition. (*People v. Curiel* (2023) 15 Cal.5th 433, 450 (*Curiel*).)

The prima facie inquiry under section 1172.6, subdivision (c) is "limited." (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) The trial court takes the petitioner's " ' "factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if [their] allegations were proved. If so, the court must issue an order to show cause." ' [Citations.]" (*Ibid.*) In reviewing the record of conviction at this stage, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Id.* at p. 972.) If, however, " 'the record, including the court's own documents "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citations.]" (*Id.* at p. 971.) A court may deny a petition only if a person is ineligible for section 1172.6 relief as a matter of law. (*Strong, supra*, 13 Cal.5th at p. 708.) We review the trial court's decision de novo. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

*Analysis*

The Attorney General concedes the trial court erred in finding Norrington ineligible for section 1172.6 relief at the prima facie stage based on the change of plea hearing transcript. We agree and accept the concession.

Norrington's change of plea colloquy does not conclusively establish that Norrington possessed the intent to kill required for attempted murder. "Murder liability as an aider and abettor requires both a sufficient mens rea and a sufficient actus reus." (*Curiel, supra*, 15 Cal.5th at p. 441.) Attempted murder requires the specific intent to kill and the commission of a direct but

ineffectual act toward accomplishing the intended killing. (*People v. Lee* (2003) 31 Cal.4th 613, 623 (*Lee*).) Prior to the amendments to sections 188 and 189, a defendant "could be convicted of attempted murder under the theory that the defendant aided and abetted a crime where murder was a natural and probable consequence." (*Estrada, supra,* 101 Cal.App.5th at p. 336.) "[I]t was not necessary to prove that the defendant intended that attempted murder be committed or even that the defendant subjectively foresaw that attempted murder could result." (*Ibid.*) This was because the direct perpetrator's " 'intent to kill' was imputed" to the aider and abettor if "attempted murder was a natural and probable consequence of [their] intent to participate in the target offense." (*People v. Montes* (2021) 71 Cal.App.5th 1001, 1007–1008.)

At the time of Norrington's change of plea, "the law allowed him to be convicted of attempted murder under the natural and probable consequences doctrine." (See *People v. Das* (2023) 96 Cal.App.5th 954, 959.) "The new law, however, eliminates such a theory. Now, the People are required to prove that [Norrington] himself harbored the requisite mental state for attempted murder—express malice." (*Id.* at pp. 959–960.) Consequently, to be guilty of attempted murder as a direct aider and abettor, Norrington "must [have] give[n] aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that [Norrington] must [have] intend[ed] to kill." (*Lee, supra,* 31 Cal.4th at p. 624.)

Here, it is undisputed that Norrington was not prosecuted as the actual shooter. Because the information generically charged Norrington with attempted murder without specifying

the theory of liability, at trial the prosecution could have proceeded on a theory of attempted murder under the natural and probable consequences doctrine. (See *Estrada*, *supra*, 101 Cal.App.5th 337–338.) But in lieu of trial, Norrington pleaded to attempted murder. (§ 1172.6, subd. (a)(2).) During that plea colloquy, Norrington admitted taking his companions to an area where the rival team was located, knew one of them had a firearm, saw one of them shoot at a rival car, and that the other companion drove the car carrying the shooter.

While the trial court properly considered the plea hearing transcript as part of the record of conviction (*People v. Fisher* (2023) 95 Cal.App.5th 1022, 1028), Norrington's statements do not conclusively establish that he harbored the shooter's murderous intent as a matter of law. Norrington did not admit to any particular type of malice when pleading to attempted murder. Nor did he admit to any specific theory of attempted murder. (*Estrada*, *supra*, 101 Cal.App.5th at p. 338.) And at the prosecution's request, the court struck the allegation that the attempted murders were "willful, deliberate, and premediated." Norrington thus did not admit that he acted with the intent to kill. (See *Estrada*, at p. 338 [defendant pleaded to a "generic charge of attempted murder without the 'willful, deliberate, and premeditated' allegation"]; Cf. *People v. Romero* (2022) 80 Cal.App.5th 145, 152 [defendant's plea of no contest to first degree murder and admission that he acted willfully, deliberately, and with premeditation rendered him ineligible for § 1172.6 relief].)

Because Norrington did not admit that he harbored an intent to kill or acted with the knowledge of his companion's intent to kill, intent could have been imputed to him under the

natural and probable consequences doctrine.  (See cf. *People v. Ramos* (2024) 103 Cal.App.5th 460, 463, 581 [Ramos admitted he aided and abetted with the specific intent to kill].)  While Norrington stipulated to the preliminary hearing transcript and police reports to provide the factual basis for his plea, the trial court only based its denial "on the plea transcript, the plea colloquy . . . on that and that alone."  Thus, there are no "unchallenged, relief-foreclosing facts" in a preliminary hearing transcript that prevent an evidentiary hearing.  (*People v. Patton* (2025) 17 Cal.5th 549, 564.)  At this prima facie stage, it would require improper factfinding to conclude that Norrington possessed the intent to kill. (See *Lewis*, *supra*, 11 Cal.5th at p. 972.)

Similarly, Norrington did not admit to a specific theory of guilt when he pleaded no contest to voluntary manslaughter to avoid trial.  (§ 1172.6, subd. (a)(2).)  The prosecution charged him with a generic charge of murdering Lopez without specifying a theory of liability.  Norrington later pleaded to a generic charge of voluntary manslaughter.  (See *People v. Gaillard* (2024) 99 Cal.App.5th 1206, 1212 [admission as an aider and abettor of voluntary manslaughter "in generic terms" did not establish guilt on a direct aiding and abetting theory].)  "Thus, the prosecution could have proceeded under any theory of liability, including a natural and probable consequences theory." (*Estrada*, *supra*, 101 Cal.App.5th at p. 338.)  And because Norrington was not the shooter and malice is not an element of voluntary manslaughter (*People v. Nunez* (2023) 97 Cal.App.5th 362, 368), the manslaughter plea does not conclusively establish that Norrington personally harbored malice aforethought required to

9

be convicted as a direct aider and abettor.  (*Gentile*, *supra*, 10 Cal.5th at pp. 844–845.)

Nor does Norrington's admission to the personal use of a firearm (§ 12022.5) establish that he possessed malice, acting with the intent to kill or with conscious disregard to human life. (*People v. Offley* (2020) 48 Cal.App.5th 588, 598.)  The personal firearm use enhancement could simply mean that Norrington "intentionally displayed a firearm in a menacing manner." (*People v. Carrasco* (2006) 137 Cal.App.4th 1050, 1059.)  We conclude the trial court erred in denying Norrington's petition at the prima facie stage.

## DISPOSITION

The order denying Norrington's petition for section 1172.6 resentencing, entered February 23, 2024, is reversed, and the matter is remanded to the trial court with directions to issue an order to show cause and hold an evidentiary hearing to determine whether to vacate Norrington's manslaughter and attempted murder convictions, recall his sentence, and resentence him. (§ 1172.6, subds. (c), (d).)  We express no opinion on the merits of the resentencing petition at that hearing.

NOT TO BE PUBLISHED.


BALTODANO, J.


I concur:


CODY, J.

10

YEGAN, A.P.J., Dissenting:

I respectfully dissent. The trial court ruling should be affirmed. It is recited at page 4 of the majority opinion. It need not be repeated. The Majority strives mightily to reverse this order denying resentencing relief. First, the order is presumed to be correct. Second, it is appellant's burden to show that the ruling is incorrect as a matter of law. Third, as I will briefly explain, the majority opinion reads like an amicus brief filed in support of appellant. It speculates to achieve what it believes to be a fair result.

The superior court has better things to do than go on a fishing expedition ordered by an appellate court. We, ourselves, have better things to do than robotically follow a statute where there is no miscarriage of justice. We are independent state constitutional officers called upon to exercise our judgment in all appeals.

Is it asking too much to require that appellant and his attorney to explain just how the admission of personal use of a firearm in a gang turf war resulting in the shooting of three victims, is not direct aiding and abetting? This defies commonsense and it cannot be cured by checking a box saying the defendant was convicted on a "natural and probable consequence" theory. The majority opinion uses phrases such as "possibility that intent to kill could have been imputed . . . under the natural and probable consequences doctrine" (maj. opn. at pp. 7, 9), and personal use of a firearm "could simply mean that Norrington 'intentionally displayed a firearm . . . .'" (Maj. opn. at p. 10.) Similarly, the majority credits appellant's statement at the change of plea proceeding that he only drove the shooters to the gang confrontation. The Majority is speculating. The theory is

inconsistent with how rival gangs confront each other.  "'''Few criminals would ever be convicted if their explanations were accepted as the gospel truth.''''"  (*People v. Farris* (1977) 66 Cal.App.3d 376, 383.)  Yet, the majority credit appellant's self-serving statement.

Finally, there is no miscarriage of justice here.  One victim is dead.  Two others are wounded.  I can conceive of no situation where appellant, who personally uses a firearm, could have acted without malice in a rival gang shooting scenario.

NOT TO BE PUBLISHED.

YEGAN, A.P.J.

Deborah S. Brazil, Judge

Superior Court County of Los Angeles

_____

Jennifer Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Chung L. Mar and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.