Filed 6/20/16  P. v. Sholes CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TYRONE ANTHONY SHOLES III,<br><br>    Defendant and Appellant. | F069898<br><br>(Super. Ct. Nos. VCF296644 &<br>VCF277846B)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Joseph A. Kalashian, Judge.  (Retired Judge of Tulare County Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Tyrone Anthony Sholes III was convicted by a jury of carjacking (Pen. Code, § 215, subd. (a))[1] (count 1); second degree robbery of Mario Whitcomb (§ 211) (count 2); second degree robbery of Robert Taylor (§ 211) (count 3); assault with a firearm (§ 245, subd. (a)(2)) (count 4); possession of a controlled substance for sale (Health & Saf. Code, § 11378) (count 5); and possession of marijuana for sale (Health & Saf. Code, § 11359) (count 6). As to counts 1 through 3, the jury found defendant personally used a firearm in the commission of the crimes (§ 12022.53, subd. (b)), and the jury found the prior strike allegation (§§ 667, subds. (b)–(i), & 1170.12, subds. (a)–(d)) and prior serious felony conviction allegation (§ 667, subd. (a)(1)) true. Defendant was sentenced to a total term of 33 years as follows: (1) 25 years for count 1 (10 years for carjacking, 10 years for the gun enhancement, and five years for the prior strike, to run consecutively); (2) five years four months for count 2, to run consecutive to count 1 (two years for robbery and three years four months for the gun enhancement); (3) 16 years for count 3 to run concurrent to count 1 (six years for robbery and 10 years for the gun enhancement); (4 one year four months for count 5, to run consecutive to count 1; and (5) one year four months for count 6, to run consecutive to count 1.[2] Defendant's sentence of eight months on count 4 was stayed pursuant to section 654 and he received 158 days for in-custody credits. Various fines and fees were imposed and restitution was ordered.

---

[1] All other statutory references are to the Penal Code unless otherwise noted.

[2] There is a clerical error in the abstract of judgment as to count 6 (Health & Saf. Code, § 11359). The trial court sentenced defendant to one year four months, to run consecutive to count 1, but the abstract of judgment reflects a concurrent sentence of four years. A trial court's oral judgment controls and "[w]hen an abstract of judgment does not reflect the actual sentence imposed in the trial judge's verbal pronouncement, this court has the inherent power to correct such clerical error on appeal, whether on our own motion or upon application of the parties." (*People v. Jones* (2012) 54 Cal.4th 1, 89.) The trial court will be directed to amend the abstract of judgment.

On appeal, defendant challenges the jury's finding he personally used a firearm during the commission of the robbery of Taylor (count 3), resulting in a sentence enhancement pursuant to section 12022.53, subdivision (b).[3] Defendant contends there is no evidence he *personally* used a firearm in the robbery and, therefore, the jury's finding is not supported by substantial evidence. We disagree and affirm the judgment.

## FACTS[4]

Whitcomb lived in Compton in Los Angeles County. His close, longtime friend, Taylor, was visiting from Atlanta, Georgia. Taylor had family in Fresno and a family problem had arisen there. Taylor rented a car and he headed for Fresno on March 6, 2014, accompanied by Whitcomb. Along the way, Whitcomb and Taylor stopped in Visalia because Whitcomb wanted to visit defendant, who was another close, longtime friend of his. Defendant and Taylor did not know one another.

Whitcomb and Taylor arrived at an apartment building in Visalia, where they met up with defendant and another man who introduced himself as Anthony. Neither Whitcomb nor Taylor had met Anthony before or otherwise knew him. Defendant directed Whitcomb and Taylor to another apartment approximately half a block away, where he said Anthony's "girl" lived. Whitcomb and Taylor drove, Anthony walked, and defendant rode his bicycle. Taylor backed the car into a parking space and left the engine running so he could charge his cellphone. The doors were closed but the windows were rolled down.

---

[3] Defendant also argued his presentence conduct credits were improperly calculated and his probation was improperly terminated. However, because those arguments were withdrawn by defendant in his reply brief, we do not consider them.

[4] The factual summary is based on the testimony of Whitcomb. Taylor did not testify at trial and although defendant testified in his own defense, he denied having any contact with Whitcomb or Taylor on March 6, 2014, and he stated he last saw Whitcomb approximately two and one-half years prior to the date of the crimes for which he was convicted.

Taylor bought two waters and two Pepsis from an ice cream truck that went by. Defendant rode up on his bike and within minutes, he started arguing with Whitcomb over a car Whitcomb sold him several years earlier for $600. Defendant was angry and aggressive toward Whitcomb, and demanded his money back. Whitcomb brushed off his demands. Defendant then walked over to a nearby garbage can as if he planned to urinate there. Instead, he pulled out a nine- or .45-millimeter semiautomatic gun and returned with the gun fully drawn and his finger on the trigger. At the time, Taylor and Anthony were approximately 15 feet away. Taylor was smoking a cigarette, while Anthony was talking and drinking one of the Pepsis Taylor bought.

Defendant ordered Whitcomb and Taylor to the ground as he charged Whitcomb and pointed the gun at Whitcomb's chest. Anthony pulled out his gun. Whitcomb tried to run but defendant grabbed him. Whitcomb asked defendant what he was doing but defendant told him to shut up. While pointing the gun at Whitcomb's chest, defendant took $100 and Whitcomb's state ID card out of his pocket. Defendant demanded Whitcomb's cell phone, which was in a holder attached to his belt, but Whitcomb was determined not to give the phone up and they scuffled. Defendant tried to "feet sweep" Whitcomb, who grabbed onto defendant as he fell to the ground and hit his head. As defendant pulled back, Whitcomb held on and was lifted back up from the ground. Defendant then hit Whitcomb behind his left ear with the butt of the gun. Whitcomb was dazed and bleeding from the hit, and the two fell to the ground again as they continued to fight over Whitcomb's phone.

While this was going on, Taylor was on his knees with his hands in the air and Anthony was pointing a .38-caliber revolver at the back of his head. Anthony demanded Taylor's money and took it out of his rear pocket. Defendant repeatedly yelled at Anthony to shoot Taylor, and he told Whitcomb he was going to kill him. When a woman came out after hearing the commotion, defendant ran to Taylor's rental car and

4.

jumped into the driver's seat, still yelling at Anthony to shoot Taylor. Defendant then told Anthony to get in the car and they sped off.

Fortunately for the victims, no shots were ever fired. Whitcomb apologized to Taylor and then called 911.

Defendant was subsequently arrested on March 14, 2014, when a police officer responded to a call that two transients refused to leave Whitendale Park in Visalia after being asked to do so by a park ranger. When defendant, who was one of the transients, identified himself, the officer recognized his name as the suspect wanted in an armed carjacking. Incident to defendant's arrest, the officer searched his duffle bag and discovered the methamphetamine and marijuana that gave rise to counts 5 and 6.

## DISCUSSION

### I.      Standard of Review

"In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.'" (*People v. Albillar* (2010) 51 Cal.4th 47, 59–60.)

### II.      Personal Use of Firearm During Robbery of Taylor

"[S]ection 12022.53, which is also known as the 10-20-life law, prescribes substantial sentence enhancements for using a firearm in the commission of certain listed felonies." (*People v. Oates* (2004) 32 Cal.4th 1048, 1052, fn. omitted.) Subsection (b) of

section 12022.53 provides that "any person who, in the commission of a felony specified in subdivision (a), personally uses a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 10 years." Carjacking and robbery are qualifying felonies under subsection (a), and the jury found defendant personally used a firearm in the commission of those crimes. (§ 12022.53, subd. (b).) Defendant challenges the enhancement to his sentence for count 3, however, on the ground the evidence presented shows Anthony, not he, personally used a firearm in the robbery of Taylor.

As defendant contends, section 12022.53, subdivision (b), does not permit him to be held derivatively liable for Anthony's use of a gun. (*People v. Brookfield* (2009) 47 Cal.4th 583, 593–594; see *People v. Walker* (1976) 18 Cal.3d 232, 241–242.) "Ordinarily, section 12022.53's sentence enhancements apply only to *personal* use or discharge of a firearm in the commission of a statutorily specified offense .…" (*Brookfield*, *supra*, at p. 590.) The exception, which is not applicable here, is when the offense is committed to benefit a criminal street gang. (*Ibid.*) In that situation, subdivision (e)(1) of section 12022.53 applies if *any* person who is a principal personally uses or discharges a firearm. (*Brookfield*, *supra*, at p. 590.) Where the crime is not gang related and the defendant did not personally use or discharge a firearm, section 12022.53 is inapplicable. (*Brookfield*, *supra*, at p. 595.)

The jury's determination that defendant personally used a gun in the robbery of Taylor does not require reliance on a derivative liability theory, however. Whitcomb testified that after defendant walked toward the garbage can as if he planned to urinate there, he returned from behind the can with a gun fully drawn and his finger on the trigger, and said, "You n_____s lay down." Anthony then drew a gun, and defendant "charged" Whitcomb, pointed the gun at his chest, and robbed him while Anthony robbed Taylor at gunpoint approximately 15 feet away.

"Although the use of a firearm connotes something more than a bare potential for use, there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies. 'Use' means, among other things, 'to carry out a purpose or action by means of,' to 'make instrumental to an end or process,' and to 'apply to advantage.' [Citation.] The obvious legislative intent to deter the use of firearms in the commission of the specified felonies requires that 'uses' be broadly construed." *(People v. Chambers* (1972) 7 Cal.3d 666, 672; accord, *People v. Smit* (2014) 224 Cal.App.4th 977, 988.) Courts have repeatedly recognized the intentional display of a firearm ""'in a menacing manner *in order to facilitate the commission of an underlying crime*'" constitutes personal use under section 12022.53, subdivision (b). (*People v. Thiessen* (2012) 202 Cal.App.4th 1397, 1405; see *People v. Wardell* (2008) 162 Cal.App.4th 1484, 1494–1496; *People v. Grandy* (2006) 144 Cal.App.4th 33, 42; *People v. Carrasco* (2006) 137 Cal.App.4th 1050, 1058–1060; *People v. Granado* (1996) 49 Cal.App.4th 317, 328–330.)

The focus of defendant's argument is the chain of events that occurred after he drew his gun and ordered both victims to the ground. It is the action taken by defendant in initiating the robberies that is relevant, however, and there was sufficient evidence to support a finding by a reasonable jury that defendant facilitated the commission of both robberies when he drew his gun and ordered the victims to get down to the ground. (E.g., *People v. Thiessen*, *supra*, 202 Cal.App.4th at p. 1405; *People v. Carrasco*, *supra*, 137 Cal.App.4th at pp. 1058–1060); *People v. Granado*, *supra*, 49 Cal.App.4th at pp. 328–330.) Thus, the jury's determination that defendant personally used a firearm within the meaning of section 12022.53, subdivision (b), during the robbery of Taylor is supported by substantial evidence and we reject his argument to the contrary.

**DISPOSITION**

The judgment is affirmed. The trial court is directed to correct the abstract of judgment to reflect the sentence for count 6 is one year four months, to run consecutive to count 1, revising defendant's total prison term to 33 years, and to forward the amended abstract of judgment to the appropriate authorities.

_____
KANE, Acting P.J.

WE CONCUR:

_____
DETJEN, J.

_____
PEÑA, J.